IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| SABAS QUIRAY, | ) | |
| | ) | |
| Plaintiff, | ) | No.  CV-05-1234-HU |
| | ) | |
| v. | ) | |
| | ) | |
| HEIDELBERG, USA, a foreign corporation, | ) | OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

Robert J. Miller
MOOMAW, MILLER & HILDEBRAND
12275 S.W. Second Street
Beaverton, Oregon 97005

    Attorney for Plaintiff

Bruce C. Hamlin
LANE POWELL PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158

    Attorney for Defendant

HUBEL, Magistrate Judge:

    Plaintiff Sabas Quiray brings this negligence action against the seller of a printing press which was the cause of a workplace injury to plaintiff in July 2003.  Both parties have consented to entry of final judgment by a Magistrate Judge in accordance with

1 - OPINION & ORDER

Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). Defendant moves for summary judgment. I grant the motion.

Defendant also moves to strike portions of two affidavits submitted by plaintiff in opposition to the motion for summary judgment. Because I grant the motion for summary judgment even without striking the subject affidavits, I deny the motions to strike as moot.

## BACKGROUND

The press on which plaintiff was working, referred to as the "Web 16," was manufactured by Heidelberger Druckmaschinen AG ("HDM") of Germany. It was sold to Heidelberg West, Inc. ("HWI"), a predecessor of defendant Heidelberg USA, Inc. ("HUSA"), in 1988. After being warehoused, it was sold by HWI to Graphic Arts Center ("GAC"). HWI installed the Web 16 at GAC's Portland facility in 1990.

Plaintiff was injured while cleaning the web press. Cleaning the press includes gumming the plates. Gumming the plates involves applying a chemical to a plate attached to a cylinder, using a sponge. While cleaning, plaintiff and other pressmen would spin the press at up to 8,000 rotations per minute. Cleaning and gumming the press at that speed or higher was referred to as doing it "on the fly." Cleaning and gumming the press was done at that higher speed because of production schedules. Cleaning and gumming could be done at these speeds, but with risks.

When GAC purchased the press, the press had the ability to operate in crawl mode, and in inch or safe mode. Crawl mode means that the press rotates at approximately 30 to 50 RPMs. Safe or inch mode means that the press only moves forward or backwards at

2 - OPINION & ORDER

30 to 50 RPMs when a button controlled by the operator is held down. Both of these features continued to function throughout the time that the web press was at GAC and they were functional on the date of the accident.

When the press was first installed at GAC, HWI came to service or adjust the web press. After the first year, HWI or its successor was called out every couple of years. The last time that HUSA serviced the web press before plaintiff's accident was June and July 1999. That service work did not involve guarding of the rollers or cylinders, stop buttons, or any aspect of cleaning or gumming. According to defense counsel's undisputed representation at oral argument, the 1999 service work was done on "unit 6" of the web press while plaintiff's accident occurred while he was working on "unit 2" of the web press.

It is undisputed that GAC never asked HUSA to make any recommendations regarding (1) the method of cleaning or gumming the Web 16; (2) the training of pressmen or other personnel in such methods; (3) whether the web press had safety features comparable to other web presses on the market at any time after the sale and installation; or (4) the appropriateness or feasability of upgrading any safety features of the web press. GAC did not ask HUSA or its predecessor to evaluate the guards between the blankets and the cylinder plate, or the number or location of stop switches on the Web 16.

Notably, as plaintiff confirmed during oral argument, there is no evidence in the record that defendant, or its predecessor, did some affirmative post-sale negligent act or made a post-sale affirmative misrepresentation either about the gumming procedures,

3 - OPINION & ORDER

or about the parts of the web press involved in causing plaintiff's injury.

## STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving

4 - OPINION & ORDER

party. T.W. Elec. Serv., 809 F.2d at 630-31.

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Id.; In re Agricultural Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990); California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

## DISCUSSION

Plaintiff's Complaint lists nine specifications of negligence, all contending that defendant was negligent by failing to do something. Plaintiff alleges defendant was negligent by:

(1) failing to warn/give notice of unreasonable risks associated with the use and procedures of routine cleaning and maintenance of the press;

(2) failing to adequately inspect the press to discover unsafe conditions or to make recommendations to correct said problems;

(3) failing to recommend or advise of upgraded or improved safety devices or features consistent with industry standards;

(4) failing to recommend or advise of replacement or modifications of press rollers given current industry standards;

(5) failing to recommend or advise of installation of an additional stop button current with industry standards;

(6) failing to recommend or advise of a modification or limitation of speed in which the press should be operated during routine cleaning and maintenance procedures;

(7) failing to recommend or advise re-training operators of the press;

5 - OPINION & ORDER

1   (8) failing to revise the press operating manual; and
2   (9) failing to advise press equipment owners to correct and
3   upgrade press equipment to prevent future incidents.
4   Compl. at ¶ 7.
5       Although plaintiff styles his claim as one of negligence,
6   Oregon cases make clear that if the acts, omissions, or conditions
7   complained of existed or occurred before or at the date on which
8   the product was first purchased for use or consumption, the claim
9   is properly considered a product liability civil action, governed
10  by Oregon Revised Statutes §§ (O.R.S.) 30.900 - 30.927. E.g.,
11  Simonsen v. Ford Motor Co., 196 Or. App. 460, 466-67, 102 P.3d 710,
12  714-15 (2004) (a "product liability civil action," "'embraces all
13  theories a plaintiff can claim in an action based on a product
14  defect,' including, for example, negligence, strict liability,
15  breach of warranty, and fraudulent misrepresentation" ) (quoting
16  Kambury v. DaimlerChrysler Corp., 185 Or. App. 635, 639, 60 P.3d
17  1103 (2003)); see also Erickson v. Air-Crane Co. v. United Tech.
18  Corp., 303 Or. 281, 286, 735 P.2d 614, 616 (1987) (O.R.S. 30.905
19  "applies only to acts omissions or conditions existing or occurring
20  before or at the date on which the product was first purchased for
21  use or consumption") (internal quotation omitted).
22      Notably, the product liability statutes include an eight-year
23  statute of ultimate repose which provides that a product liability
24  civil action may not be brought for any personal injury that is
25  caused by a product and that occurs more than eight years after the
26  date on which the product was first purchased for use or
27  consumption. O.R.S. 30.905(1). The statute also provides that a
28  product liability civil action must be commenced not later than ten

6 - OPINION & ORDER

years after the date on which the product was first purchased for use or consumption.  O.R.S. 30.905(2)(b).

If plaintiff's claim is properly characterized as a product liability civil action, it is barred by O.R.S. 30.905 because the injury did not occur within eight years of when the product was sold to GAC and the action was not commenced within ten years of when the product was sold to GAC.

Kambury and Simonsen both instruct that as pleaded, plaintiff's claims are properly characterized as product liability civil actions because all of the alleged failures by defendant address a defect or failure to warn or act by defendant that originated before or at the time of sale and persisted and continued until the time of plaintiff's accident.  As the court in Kambury explained:

> an initial failure to warn prior to the first sale of the product that merely continues after the date of the sale is not sufficient to state a claim independently of O.R.S. 30.900. . . . At a minimum, the complaint must allege a failure to warn at some later date after the product's defect was discovered. . . . or some other negligent act that occurs after the date of purchase.  In this case, the amended complaint does not allege that defendants discovered a defect after the decedent purchased the car but failed to warn her of that defect, nor does it allege, as the complaint did in Erickson, that some other negligent act occurred after the product was sold.  Rather, the complaint alleges only that defendants failed to warn decedent before she bought the car and that that initial failure continued until the date of her death.  Following Sealey [v. Hicks, 309 Or. 387, 788 P.2d 435 (1990)], we hold that that allegation is insufficient to avoid ORS 30.905 and accordingly affirm the trial court's judgment. " Id.

Kambury, 185 Or. App. at 642, 60 P.3d at 1107.

In Simonsen, the court held that negligence allegations based on the manufacturer's failure to timely discover a latent defect and issue a recall before a certain date, and further based on the

7 - OPINION & ORDER

manufacturer's delay of a recall notice until a later date, were governed by O.R.S. 30.905 because they did not involve allegations of post-purchase conduct. 196 Or. App. at 466-67, 102 P.3d at 714-15.

Rather, the first allegation merely alleged that the defendant failed to discover the latent defect at the time of sale and that this initial failure continued (by virtue of the defendant's failure to discover and remedy the defect), after the sale until the time of the accident. Id. at 472, 102 P.3d at 718. The second allegation of negligence regarding the delay in issuance of the recall notice was also interpreted as a continuing failure to remedy a problem existing at the time of sale and thus, was not considered to be post-sale conduct subject to a negligence claim, but was conduct governed by O.R.S. 30.905.

As the court in Kambury noted, without evidence of a failure to warn at some later date after the product's defect was discovered or some other negligent act that occurs after the date of purchase, the claim, regardless of the title ascribed to it by the plaintiff, will be considered a product liability civil claim, subject to the limitations in O.R.S. 30.905.

The record here reveals no post-sale failure to warn following the discovery of a product defect and no other negligent act occurring after the date of purchase. As noted above, plaintiff's counsel conceded at oral argument that plaintiff has no evidence that defendant or its predecessor did or said anything affirmatively to suggest that operating the web press in the manner alleged to have caused plaintiff's injury here, was safe.

Rather, plaintiff's counsel contended at oral argument that it

8 - OPINION & ORDER

is defendant's status of being an expert in these particular machines and defendant's conduct in offering initial training and then occasional but ongoing service, that could lead a jury to conclude that by saying nothing, defendant was effectively representing that the machine was safe.  I reject this argument as an unsupportable extension of Oregon law.

The failure to warn of a defect is not sufficient to toll the statute of repose.  Josephs v. Burns, 260 Or. 493, 500, 491 P.2d 203, 206 (1971).[1]  And, as I have held in a previous case, O.R.S. 30.905 is not avoided by a failure to warn of a defect in the product existing at the time of the first sale, which was discovered after the initial sale.  Evans v. Bell Helicopter Textron, No. CV-97-17880-HU, Findings & Recommendation (D. Or. June 19, 1998), adopted by Judge Redden (D. Or. Aug. 7, 1998).

Based on the record which shows that the specified acts of negligence all relate to conditions, defects, or failures that existed at the time of sale and persisted to the time of plaintiff's injury, and which fails to show any affirmative act or representation by defendant cognizable as a separate post-sale specification of negligence, the action is time-barred and defendant's summary judgment motion is granted.

/ / /

/ / /

---

[1] Although Josephs was decided under a different statute of repose (O.R.S. 12.115), its reasoning "is equally applicable to civil product liability actions.  Sealey v. Hicks, 309 Or. 387, 394, 788 P.2d 435, 438 (1990), partially overruled on other grounds, Smothers v. Gresham Transfer, Inc., 332 Or. 83, 123, 23 P.3d 333, 355-56 (2001).

9 - OPINION & ORDER

CONCLUSION

Defendant's motion for summary judgment (#17) is granted. Defendant's motions to strike (#34, #35) are denied as moot.

IT IS SO ORDERED.

Dated this  8th  day of  August , 2006.


                                  /s/ Dennis James Hubel
                                 Dennis James Hubel
                                 United States Magistrate Judge

10 - OPINION & ORDER